UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:05-CR-35-TS |
| | ) | |
| KENNETH L. RICHARDS | ) | |

**OPINION AND ORDER**

The Defendant has been charged in a single count Indictment with possession of more than 5 grams but less than 50 grams of crack cocaine. On July 21, 2005, he filed a Motion to Suppress, arguing that the police used a deficient warrant to search his home on May 2, 2005, which uncovered evidence leading to the charges against him. On August 25, 2005, the Court denied without prejudice the Defendant's motion and granted the Defendant leave to amend it. Accordingly, on September 9, 2005, the Defendant filed his Second Motion to Suppress. The government responded to the motion on September 15, 2005, and the Defendant filed a Reply on September 28, 2005.

In his Second Motion to Suppress, the Defendant once again argues that the state judge issued a search warrant on the basis of an affidavit that did not establish probable cause, and that the police officers were not faced with exigent circumstances justifying a warrantless search of the Defendant's home. Consequently, the Defendant requests that the Court suppress all evidence derived from the search. The government, on the other hand, maintains that the search warrant affidavit did contain sufficient probable cause to issue a warrant, and asks the Court to deny the Defendant's motion to suppress without a hearing on the Defendant's contentions.

## ANALYSIS

**A.     Standard for Challenging a Search Warrant**

The Defendant challenges the search warrant for his home under Indiana's laws. In this Court, such challenge is improper as the Court must apply the United States' laws, not the laws of Indiana. *See Cooper v. California*, 386 U.S. 58, 61 (1967) ("[T]he question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one."); *United States v. Delaporte*, 42 F.3d 1118, 1119 (7th Cir. 1994) ("State officers do not by violating state law violate the federal Constitution."). Therefore, the Court will examine whether the search warrant was issued in violation of the Fourth Amendment to the United States Constitution.

Given the great deference that is afforded a judge's determination of probable cause, a defendant is limited in the challenges he can make to the validity of a search warrant. The reviewing court does not conduct a *de novo* review, but only determines whether there is substantial evidence in the record supporting the judge's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

> When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.

*United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003) (citations omitted). The Fourth Amendment requires only that the judge had before him a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 237 (1983).

When the veracity of the affidavit is challenged, a defendant may be entitled to an evidentiary hearing if he meets certain requirements outlined in *Franks v. Delaware*, 438 U.S. 154 (1978):

> To mandate an evidentiary hearing . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and *those allegations must be accompanied by an offer of proof*. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. *Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained*. Allegations of negligence or innocent mistake are insufficient.

*Id*. at 171–72 (emphasis added).[1] In addition, the Defendant must show that the incorrect statement was material, that is, was necessary for a finding of probable cause to issue the warrant. *United States v. McAllister*, 18 F.3d 1412, 1416 (7th Cir. 1994). Finally, search warrant affidavits are presumed to be valid. *See Franks*, 438 U.S. at 171.

**B.     Application of the Standard**

**(1)    *Search Warrant Affidavit***

On May 2, 2005, Detective Steven Espinoza of the Fort Wayne Police Department submitted a search warrant affidavit for a search of the Defendant's home at 416 Creighton Avenue, Fort Wayne, Indiana. In the affidavit, Detective Espinoza stated that he believed that the home contains "certain evidence of Dealing in Cocaine, including cocaine and any derivatives thereof, United States Currency, safes and/or strong boxes, firearms, records of drug transactions and/or other

---

[1]"A Franks hearing affords a defendant the opportunity to show, by a preponderance of the evidence, that the warrant affidavit contained perjury or a reckless disregard for the truth. If the defendant meets this burden, the court will set aside that 'false material' contained in the warrant affidavit, and if probable cause cannot be established from the valid and truthful portion of the affidavit, the entire search is deemed to be invalid and the ensuing search is void." *United States v. McDonald*, 723 F.2d 1288, 1292 (7th Cir.1983).

3

financial information which constitutes evidence of alleged drug transactions and illegal possession of said controlled substances." (Df.'s Ex. 2 at 1.) He based his opinion on the following information, also stated in the affidavit.

Detective Espinoza conducted two controlled purchases of narcotics involving the Defendant and a Confidential Informant 1194 ("CI"). The first purchase took place on January 31, 2005. Detective Espinoza met with the CI at 12:10 p.m. at a predetermined location. The CI was searched and no contraband was found on him. The CI then called the Defendant, who did not answer, but who returned the call shortly. The Defendant told the CI to park at the Discount Tobacco Store, at 2033 South Lafayette Street, which is about a block north of the Defendant's residence. At this time, the CI's car was also searched and no contraband was found.

Detective Espinoza advised officers who were assisting him where the drug deal was going to take place and told them to watch the Defendant's residence. Detective Espinoza gave the CI $280 of prerecorded buy money, and followed him to the parking lot of the Discount Tobacco Store. Detective Thompson was with Detective Espinoza. The Detectives parked in the area where they could see the CI. At 12:25 p.m., the CI again called the Defendant, and six minutes later the observing police officers reported that the Defendant walked out of his house and headed in the alley toward the direction of the CI. Two minutes later, the Defendant walked up to the CI's car and conducted a transaction with him through the driver's window. Detective Espinoza was observing the entire occurrence through binoculars.

The CI then left and the Detectives followed him to a predetermined location. At the location, the CI handed to Detective Espinoza a knotted plastic bag containing 7.3 grams of cocaine. The CI and the car were searched again but no contraband or prerecorded money were found. When

4

the CI left, the Defendant walked in and out of the tobacco store and returned home.

The second controlled purchase took place on April 29, 2005. Detective Espinoza again used the CI. Once more, they met at a predetermined location, where the CI and his car were searched for contraband. The CI was outfitted with a one way listening device and a digital recorder. The CI called the Defendant but received no answer. As Detective Espinoza was giving the CI $280, the Defendant called the CI and told him that he wanted to meet with the CI at CI's residence. Detective Espinoza told the CI that he should conduct the buy at the Discount Tobacco Store parking lot. Detective Espinoza then followed the CI to that location. When the CI arrived at the parking lot of the Discount Tobacco Store, he called the Defendant several times but received no answer. At 1:19 p.m., Detective Espinoza instructed the CI to drive to alley behind the Defendant's house. When the CI did so, the Defendant called him and told him to return and wait at the tobacco store. Ten minutes later, the observing officers reported that the Defendant came out of his house and was heading toward the CI. Two minutes later, he approached the CI's car and told him to go over to the BP station on Hessen Cassel, and that he would meet him there in twelve minutes. Detective Espinoza followed the CI to the gas station and parked his car where he could observe him.

The CI again called the Defendant but received no answer. Soon, however, the Defendant called him back and told him that he would be arriving shortly. At 2:01 p.m., the Defendant came out of his house, got into the passenger seat of a tan Ford Focus driven by a black woman. The surveillance officers followed the Defendant to the BP station. At the BP station, the Defendant told the CI to go to Stardale Avenue and wait for him there.

The Defendant left the gas station and went to meet the CI on Stardale Avenue. Detective Stein was parked on Stardale, and reported to Detective Espinoza that the Defendant conducted a

5

transaction with the CI at 2:20 p.m., and now was turning north on Hessen Cassel. At this time, Detective Espinoza saw the CI and followed him to a predetermined location. There, the CI gave Detective Espinoza two zip lock bags containing 5.6 grams of cocaine. The CI and his car were again searched but no contraband or buy money were found.

The observing officers later reported that the Defendant returned to his home.

### (2)    *Reliability of the CI and Detectives Thompson and Stein*

The Defendant contends that the affidavit does not contain sufficient probable cause to issue a search warrant for his home. He argues that the veracity of the CI, Detective Thompson, and Detective Stein has not been established, which makes the affidavit unreliable. In addition, he submits that some of the information in the affidavit is wrong, thus making it lacking in probable cause. The Court will consider each issue in turn.

The lack of information about the CI's background does not undermine the reliability of the affidavit. Although the judge who issued the warrant was not told about the CI's background, he could reasonably rely on Detectives Espinoza, Thompson, and Stein for ascertaining probable cause. Detective Espinoza directed the controlled drug buys using the CI. Both times, he met the CI at a predetermined location and, with the assistance of Detective Thompson, searched him and his car for any contraband. Both times he gave the CI $280 to buy the cocaine. After both purchases, he met the CI at a predetermined location and received the drugs from the CI, who was once more searched for contraband and the prerecorded money.

Moreover, the police officers continually watched the CI. The first time, Detective Espinoza followed the CI to the Discount Tobacco Store and parked his car where he could observed the CI

6

through binoculars. After the deal was over, he followed the CI to a predetermined location. The second time, too, the CI remained within the sight of either Detective Espinoza, the surveillance officers positioned around the Defendant's home, or Detective Stein who was parked on Stardale Avenue.

The affidavit leaves no time gaps during which the CI could have picked up the drugs from someone other than the Defendant, who was the only persons besides the police officers whom the CI encountered. Therefore, even if the judge did not have the information to establish the CI's trustworthiness, he could nevertheless reasonably conclude that there was probable cause to issue the search warrant.

The Defendant's arguments about the lack of Detective Thompson's and Detective Stein's credibility are without merit and contrary to the law. These detectives assisted Detective Espinoza in the two controlled buys, and the judge could reasonably rely on their reports, even if their credentials were not spelled out. *See United States v. Ventresca*, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); *U.S. v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984) (stating that an affiant can rely on his fellow agents "who plainly could be regarded as a reliable source by the magistrate").

In light of the substantial evidence in the record, the Court finds that the affidavit set forth facts sufficient to induce a reasonable person to believe that a search of the Defendant's home will uncover evidence of crime.

**(2)**     *Truthfulness of the Search Warrant Affidavit*

Since the Defendant challenges the veracity of the affidavit, the Court must determine whether a *Franks* hearing is necessary. The Defendant points out that no Discount Tobacco Store exists at 2033 South Lafayette Street, and that there is no BP station on Hessen Cassel. Rather, 2033 South Lafayette Street houses a hair salon, and the alleged BP station is really a Handy-Dandy Lassus gas station. He also notes that the alley behind his house is not continuous as purportedly alleged in the affidavit.

In response, the government concedes that Detective Espinoza made an inadvertent mistake in characterizing the first location of the drug buy as a parking lot of a Discount Tobacco Store. As to the gas station, the government submitted a phone book page listing a BP station on Hessen Cassel. The government does not discuss the alley.

The Defendant has failed to show that the inconsistencies in the affidavit were deliberately false or included with reckless disregard for the truth, or that the inconsistent statements were material. The Defendant has not submitted any offer of proof that Detective Espinoza lied in the affidavit. He only submits statements from a private investigator, who attests that there is no Discount Tobacco Store at 2033 South Lafayette Street, and a statement from the gas station's manager, who attests that the gas station was a BP station. Thus, the Defendant has sufficiently established that the affidavit contained mistakes, but has failed to offer anything that would show that they were deliberate.

The deliberate intent to lie is especially questionable as to the description of the gas station. The Defendant submitted pictures of this gas station, which on the outside appears as one regularly bearing BP insignia: it is green and the architectural structure resembles BP stations around the

8

nation. The only thing that gives away that it may not be a BP station is the HD sign.

As to the alley, the common sense reading of the affidavit does not suggest that the Defendant continued to walk in the alley until he reached the CI. The affidavit does not describe the Defendant's path, but only states that the Defendant came out of his house at the back and began walking in the alley.

Moreover, the Defendant has not shown that the mistaken facts, even if Detective Espinoza deliberately lied about them, were necessary for a finding of probable cause to issue the warrant. Although that might have been the case if the CI purchased cocaine only the first time, the mention of the exact location of the Discount Tobacco Store or the BP gas station in the narrative of the second buy is irrelevant. The second buy took place on Stardale, where it was monitored by Detective Stein. After the deal was over, the detectives observed the CI until he arrived to a predetermined location and turned over contraband to the police. Nothing material took place at the wrongly alleged Discount Tobacco Store or at the wrongly identified gas station, such that the removing of these facts would undermine the existence of probable cause in the affidavit. Accordingly, no *Franks* hearing is necessary on the Defendant's Motion to Suppress.

## CONCLUSION

Since the Defendant has not shown that the State judge lacked probable cause to issue a search warrant for his home, or that Detective Espinoza deliberately lied about the existence of the Discount Tobacco Store or the BP station on Hessen Cassel, no hearing is necessary for this matter, and his Motion to Suppress [DE 30] is DENIED.

SO ORDERED on November 1, 2005.

                                                           S/ Theresa L. Springmann
                                                         THERESA L. SPRINGMANN
                                                         UNITED STATES DISTRICT COURT